STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-00-020

PEOPLES HERITAGE SAVINGS BANK,
    Plaintiff

v.                                              ORDER                    RECEIVED & FILED

OCT 2 3 2001
ANDROSCOGGIN
SUPERIOR COURT

JEAN MARIE PARADIS and RITA C. PARADIS. ,
    Defendants


FINDINGS OF FACT AND CONCLUSIONS OF LAW

In September 1986, Jean Marie (a/k/a "John") and Rita[1] Paradis acquired four

buildable lots on Linda Circle in Lewiston, with the intention of installing modular

homes, and selling the properties at a profit.   In order to fund the project, they

created a $180,000 line of credit at Mid Maine Savings Bank and, at the same

time, signed a Promissory Note ("Note") requiring them to repay any sums

borrowed on the line of credit.   The Note was secured by a Mortgage Deed

("Mortgage") pledging various pieces of real property as collateral for that line of

credit.

Mr. and Mrs. Paradis sold two of the improved lots in 1988 and, at that time,

paid one-half of the principal due on this debt.   Between 1986 and 1994, no other

payments were applied to the principal; Mr. and Mrs. Paradis paid only the interest

charges.

In 1994, the terms of this debt were modified by agreement between Mr. and

---

1 Mrs. Paradis died while the action was pending, and since that time, her husband has been
acting as the personal representative of her estate.  All references to him shall include him in his
individual and representative capacities.

Mrs. Paradis and Mid Maine. An Allonge dated April 29, 1994 was signed by Mr. and Mrs. Paradis, and by Mid Maine's Vice President, Paul Lacombe. According to that document, the defendant then owed $89,875.00 to Mid Maine. The pertinent terms of that Allonge follow:

> Until such time as DEMAND has been made, the Borrowers promise to pay equal monthly consecutive installments of principal and interest, initially in the amount of Nine Hundred Twenty-Four Dollars and Ninety-Nine Cents ($924.99) commencing on May 29, 1994, and continuing on the same day of each and every month thereafter until and including March 29, 2009 . . . If any installment is not received within fifteen (15) days of when due, then every party hereto shall be liable to the Lender for a late payment fee of five percent (5%) of the amount of such delinquent installment, to be assessed at the option of the Lender at any time while any balance remains outstanding hereunder. . . .

> All parties hereto (whether maker, comaker, endorser, guarantor or otherwise) hereby severally waive demand, presentment, notice of dishonor and protest, and each agrees to pay all costs of enforcement and collection, including reasonable attorneys' fees, incurred by the Lender, plus interest thereon at the rate provided for herein.

> Notwithstanding the inclusion of specific default provisions, the Note is and remains a DEMAND obligation for which demand may be made at any time and for any reason. Prior to DEMAND, however, this Note shall become immediately due and payable without notice or demand upon 1) the failure of the Borrowers to make any installment or other payment to the Lender hereof when due. . . .

Peoples Heritage Bank ("Bank") acquired Mid Maine's assets and liabilities, including multiple loans to the defendants, in July 1994. At that time, this loan obligation was identified as #50230. Late in 1994, the Bank began issuing separate bills for the escrow of municipal taxes. Because Mr. and Mrs. Paradis owned more than one mortgaged property, the Bank sent them a monthly document containing multiple escrow charges - one for each property.

Between 1994 and 1998, when the Bank changed its procedures, Mr. and Mrs. Paradis did not routinely make the escrow payments demanded by the Bank for any of their properties. Instead, it was their practice to pay the taxes directly to the City of Lewiston, but only after tax liens were imposed. Mr. Paradis testified that, because "the City was in competition with [him, he'd] use their money." Paul Labrecque, Lewiston's Tax Collector and Treasurer, testified that, although he was not certain that Mr. or Mrs. Paradis always paid the liens before they matured, none of the properties had been foreclosed for unpaid taxes.

During 1997, the Bank decided to end its practice of consolidating tax escrow demands. By letter dated July 9, 1997, a new Escrow Agreement was sent to Mr. and Mrs. Paradis. That Agreement allowed the Bank to create separate escrow accounts for each loan. Although the Bank intended to change its collection methods as of January 1, 1998, Mr. and Mrs. Paradis did not sign the Agreement until January 30, 1998. As a result, no demands for tax escrow payments under either the "old" or the "new" method were made by the Bank in January or February 1998. Mr. and Mrs. Paradis did not volunteer to make any tax escrow payments for those months.

In calculating the sums necessary to cover the taxes for the #50230 loan, the Bank made an error. Although all previous bills had demanded $340 per month for taxes, starting in March 1998, the Bank began billing only $190 per month. In May 1998, when the first payment of annual taxes was due, the City issued lien notices to Mr. and Mrs. Paradis. Despite those notices, no change was made in the escrow demands, and the defendants did not increase their payments each month.

3

In March 1999, loan #50230 and all of defendants' other loans with the Bank were assigned to Alice Paxson, one of its workout officers. Thereafter, Ms. Paxson attempted to have Mr. and Mrs. Paradis comply with the various terms of their notes. The relationship between Ms. Paxson and Mr. Paradis was apparently less than cordial.

In September 1999, a third lot was sold by Mr. and Mrs. Paradis for $76,000. At the closing, Mr. and Mrs. Paradis were required to pay $1,288.34 for 1998 taxes, and $2,375.50 for 1999 taxes. $38,000 from the remaining proceeds was applied to this debt. Mr. Paradis then demanded that the Bank reamortize the balance of the loan, based upon that "prepayment." The Bank refused in a letter dated October 19, 1999. Since that time, Mr. Paradis has refused to make any further payments on this debt.

In letters dated December 22, 1999, Craig Posey from the Bank's Collections Department notified Mr. and Mrs. Paradis that the Note was in default, and that they had until January 5, 2000 to pay $3,784.43 and cure the default. On January 4, 2000, the Bank "swept" all accounts in Mr. Paradis' name, including one he called a trust account for his mother's estate.[2]

Mr. Paradis had by then retained Attorney Stephen Beale to try to reach some accommodation with the Bank. Mr. Beale's attempts were unsuccessful, in part

---

2  Mr. Paradis' mother died intestate in 1984. At the time of her death, Mr. Paradis was not his mother's trustee or her guardian. Despite that, he established an account he referred to as the trust account, and claimed to have deposited the sum he paid his mother to buy his parents' business. Mr. Paradis testified that the proceeds were to have been distributed among his siblings; no distribution has occurred in the seventeen years since their mother's death.

Because insufficient evidence about this account was presented, the court cannot determine whether the account was a "trust account" pursunat to 18-A M.R.S.A. § 6-101.

because the bank refused or was unable to acknowledge its own errors or provide information to explain its conclusions. A February 15, 2000 letter to Attorney Beale from Ms. Paxson attached documents that were anything but "self-explanatory."

By the date of that letter, the Bank had already retained Attorney David Dubord. On February 11, 2000, Attorney Dubord had sent a letter to the defendants to notify them that the Bank was demanding immediate payment of all sums due. In that letter, Attorney Dubord stated that, although an event of default was not required, it was the Paradis' failure to make payments that convinced the Bank to demand full payment. Again, the defendants made no payments in response to that letter.

On April 3, 2000, Peoples Heritage Bank initiated this foreclosure action against Mr. and Mrs. Paradis. The case was tried on October 9, 2001 and October 10, 2001. On those dates, the parties submitted multiple, and in many cases, duplicate exhibits, and presented the testimony discussed above from Alice Paxson, Paul Labrecque, Mr. Paradis, Paul Lacombe, and Roger Couturier.

## DISCUSSION

As was mentioned above, Mr. Paradis has made no payments of any kind or size since September 1999. Mr. Paradis argued that his failure to pay was not a breach of his agreements with the Bank because the Bank made arithmetical errors including the "underbilling" for City taxes and the imposition of late charges before they were incurred. He has also asserted that the Bank's actions damaged his credit history and reputation in the community.

5

The Bank did make a disturbing number of errors in calculation, did prematurely impose late fees, and did inappropriately include legal bills in its calculation of principal.[3] However, the miscalculation of the tax escrow was not done willfully and, as paragraph 6 of the Escrow Agreement indicates, the Bank has no "liability to Borrower hereunder except in the event that Lender acts wrongfully and with actual intent to cause Borrower loss or liability hereunder."

When improperly imposed late fees were brought to its attention, the Bank made corrections. In this case, it is not possible for the court to determine whether all such fees were vacated. Best practice would, of course, involve a change in the computer program that imposes fees too early. In the accounting discussed below, the Bank shall ensure that any late fees included were correctly imposed. *i.e.*, imposed on payments made after the close of business on the 14th of May, July, October, and December, and payments made after the close of business on the 15th of January, February, April, June, August, September, and November. Late fees for payments made in March would depend on the calendar year.

The underbilled escrow account should have been corrected as soon as Mr. Paradis received the first lien notice from the City in 1998. Although somewhat conflicting, the testimony on this issue demonstrated that the Bank knew of the error and failed to correct it. However, given Mr. Paradis' history of failing to pay taxes until well after the due date, and the language of the Escrow Agreement, the

---

[3] The parties stipulated that the principal sum owed, as of January 27, 2000, was $33,663.84. Since that date, the "principal sum" has increased because the Bank has added all legal fees incurred in this action to that figure.

court cannot find that this error was a breach of the Bank's duty to the defendants.

The inclusion of attorney fees in establishing the principal owing is more troubling; the court hopes that, after this action, the Bank understands that it cannot impose legal fees. That function is exclusively within the court's authority.

None of the Bank's actions excuse the defendants' refusal to pay, and none of them are sufficient to trigger any liability by the Bank to them. If Mr. Paradis disagreed with the practices of the Bank, he could have taken his business elsewhere, or made a complaint with the Bureau of Banking. Refusing to repay the money already lent to him by the Bank was a breach of the Note.

Although Mr. Paradis testified that he has been unable to obtain credit since this dispute with the Bank, there was no evidence presented in support of his assertion. It is possible that the problems with the Bank, in combination with the defendants' taxpaying practices, may have had a negative impact upon his ability to obtain credit. However, the court cannot find, by a preponderance of the evidence, that Mr. Paradis has met his burden of proof on the counterclaim. Therefore, judgment must be granted to plaintiff on defendants' counterclaim.

Jean Marie Paradis a/k/a/ John Paradis and John Paradis as Personal Representative of the Estate of Rita C. Paradis are in default of the Note by failing to pay the monthly payments required. Based upon that default, and by the terms contained in the loan documents, the Bank is entitled to Judgment against defendants for the remaining principal and interest owed. In addition, the Bank is entitled to judgment against defendants for the reasonable legal fees incurred in

enforcing the terms of the loan agreements and obtaining this Judgment.

## ORDER

Judgment for the plaintiff entered on both the plaintiff's complaint and on the defendants' counterclaim.

The plaintiff is ordered to prepare an Order and Judgment of Foreclosure and Sale, including an accounting for the sum now due and owing. Calculations shall be based upon the parties' stipulation that, as of 1-27-00, the principal owed was $33,663.84. Interest and late fees incurred shall be added to that sum. An affidavit of attorney fees shall be submitted by Attorney Dubord in support of the Bank's request for reasonable legal fees.

The clerk is instructed to incorporate this order by reference in the docket for this case.

DATED: *October 23, 2001*

_____
Ellen A. Gorman
Justice, Maine Superior Court

8